[No. 33438.    Department One.    March 1, 1956.]

*In the Matter of the Estate of* LENA M. YOUNGKIN, *Deceased.*
EVERETT L. YOUNGKIN, *Appellant,* v. MILDRED McMILLIN *et
al., Respondents.*[1]

[1]Reported in 294 P. (2d) 426.

*Raymond & Nicholson,* for appellant.

*Erik Froberg,* for respondent Seattle-First National Bank.

OTT, J.—Lena M. and Everett L. Youngkin were married in 1933. Each had been married previously. Lena M. Youngkin had no children. Mr. Youngkin, by his previous marriage, had two daughters, one of whom was adopted.

January 27, 1953, Mrs. Youngkin consulted her attorney and requested that he prepare a will for her. She directed that it contain five special bequests to certain relatives whom she named. The residue of her estate was to be given to her sister and several nephews and a niece. Everett L. Youngkin was to receive no part of her estate, and she directed that he not be informed of the will. Benjamin F. McMillin, her brother-in-law, was named executor.

January 30, 1953, when Mrs. Youngkin returned to execute the will, she noticed, upon reading it, that the will provided that her body was to be buried. She requested that it provide for cremation. The document was so changed and, thereafter, properly executed. On the same day, she went to the bank and changed her joint bank account with a niece by substituting the name of her sister, Mildred Mc-Millin, one of the principal beneficiaries under the will.

At the time the will was executed, Mrs. Youngkin was seventy-two years of age, and was suffering from arteriosclerosis. In May, 1954, she suffered a severe stroke. July 12, 1954, she was adjudicated incompetent.

Mrs. Youngkin died November 15, 1954. January 11, 1955, her will was admitted to probate. Thereafter, Everett Youngkin timely filed a petition contesting the will upon the following grounds: (1) that decedent was not mentally competent to make a will; and (2) that she was induced to sign the will by means of undue influence and fraud.

The cause was tried to the court. At the close of peti-

tioner's case, the court sustained a challenge to the sufficiency of the evidence. Findings of fact, conclusions of law, and a judgment of dismissal were entered. Everett Youngkin has appealed.

When a trial court, in a nonjury case, sustains a motion challenging the sufficiency of the evidence, it must have either (1) weighed the evidence and determined that a *prima facie* cause of action had not been proved (in which event, findings of fact are necessary), or (2), without weighing the evidence, it must have determined that the evidence failed to establish a cause of action as a matter of law (in which event, no findings of fact are necessary, and the evidence and all reasonable inferences therefrom must have been considered in the light most favorable to the plaintiff). *O'Brien v. Schultz*, 45 Wn. (2d) 769, 278 P. (2d) 322 (1954).

The court did not dismiss this case as a matter of law. It weighed the evidence and concluded that the facts which it believed to be true did not prove a cause of action. When the trial court weighs the evidence and makes findings, we will accept the findings as verities unless we determine, from the record, that the evidence preponderates against them. *Richards v. Kuppinger*, 46 Wn. (2d) 62, 278 P. (2d) 395 (1955).

The appellant, in the presentation and argument of his appeal before this court, conceded that a *prima facie* case of fraud or undue influence had not been established. This appeal is concerned only with appellant's remaining contention that the trial court erred in its finding that the testatrix was mentally competent to make a will.

The trial court found that, although the testatrix was frail and physically ill, she had

". . . sufficient mind and memory to recollect the natural objects of her bounty, and to comprehend generally the nature and extent of the property which constituted her estate, and to understand the transaction in which she was engaged on said January 30, 1953, when she had made and she executed the Will . . ."

One who contests a will has the burden of establishing its invalidity by evidence which is clear, cogent, and

convincing. *In re Mitchell's Estate*, 41 Wn. (2d) 326, 249 P. (2d) 385 (1952).

■ The test of testamentary capacity is whether, at the time the will was executed, the testatrix had sufficient mind and memory to understand the transaction in which she then was engaged, to comprehend generally the nature and extent of the property which constituted her estate, and to recollect the natural objects of her bounty. *In re Bottger's Estate*, 14 Wn. (2d) 676, 129 P. (2d) 518 (1942), and cases cited; *In re Michell's Estate, supra*; *In re Peters' Estate*, 43 Wn. (2d) 846, 264 P. (2d) 1109 (1953).

■ The record discloses that thirteen of appellant's witnesses testified to the effect that, both before and after January 30, 1953, decedent knew and recognized her husband and relatives, and that she knew generally what property she owned. Although there were witnesses who testified to occasional lapses of memory on the part of the testatrix, there were no witnesses who testified that she lacked testamentary capacity, as that term is defined in *In re Peters' Estate, supra*. One of appellant's medical witnesses did testify that, in his opinion, the decedent was not capable of handling everyday business affairs. Yet, on cross-examination, he testified that she had sufficient knowledge to know generally the nature of her property and knew the natural objects of her bounty.

That the testatrix did have sufficient testamentary capacity is further established by her ability to read, understand, and cause changes to be made in her will on the day she signed it, by the transaction at the bank with reference to the transfer of the joint account, and by her request that her husband not be advised that she had made a will.

The evidence in this case does not preponderate against the trial court's finding of testamentary capacity, and we accept it as an established fact. *Gray v. McDonald*, 46 Wn. (2d) 574, 283 P. (2d) 135 (1955).

Appellant contends that the decedent suffered from insane delusions that one stepdaughter had tried to poison her, that the other was stealing from her, and that her husband was spending large amounts of money on his daugh-

ters. Appellant requested findings of fact to this effect.

Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953, provides, in part:

"No error assigned to any finding or findings of fact made or refused will be considered unless so much of the finding or findings as is claimed to be erroneous shall be set out verbatim in the brief."

■ Since no requested finding with reference to the alleged insane delusions was set out in the appeal brief, we will not consider any alleged error of the trial court in failing to make such findings. See *Union Electric & Plumbing Supply v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry of the United States & Canada, Local Union 32*, 45 Wn. (2d) 17, 272 P. (2d) 144 (1954).

■ We must assume that the alleged delusions, as they may or may not have affected the decedent's testamentary capacity, were considered by the trial court, together with all of the other evidence in the case. *Feak v. Lacamas Valley Ranch*, 34 Wn. (2d) 798, 210 P. (2d) 133 (1949).

The court concluded that the appellant had not established the testatrix's lack of testamentary capacity. From our examination of the record, we are in accord with this conclusion, and find no merit in this assignment of error.

For the reasons given and discussed, the remaining assignments of error are without merit.

The judgment is affirmed.

HAMLEY, C. J., MALLERY, DONWORTH, and FINLEY, JJ., concur.